EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MERCEDES ORTIZ, acusado y apelante.

No. 4238.—*Sometido:* Enero 13, 1931. *Resuelto:* Abril 21, 1931.

136

*Buenaventura Esteves,* abogado del apelante; *R. A. Gómez,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Mercedes Ortiz fué convicto de homicidio voluntario, y alega que el juez de distrito erró al admitir la declaración del jefe de la policía del distrito respecto a cierta confesión o determinadas admisiones hechas en el curso de una investigación preliminar.

La médula del argumento es: Que si una confesión fué o no hecha voluntariamente es cuestión que incumbe a la corte resolverla, y no al jurado; que en el caso de autos no hubo un examen liminar en cuanto al carácter de la confesión; y que el testimonio sobre este extremo se presentó en presencia del jurado.

Las primeras pregunta y respuesta en torno a cualquier admisión o confesión, fueron:

"P. Si Mercedes Ortiz libre y espontáneamente le hizo a usted algunas manifestaciones, sírvase decirle a los señores del jurado las manifestaciones que le hubiera hecho Mercedes Ortiz, el acusado.

"R. La noche del 6, amanecer el 7 de enero de este año, en la oficina del Dr. Agustín Sánchez en Isabela, estando en la mesa de operaciones Eugenio Grajales, en la misma oficina estaba Mercedes Ortiz que presentaba una herida en un brazo; allí le presenté dos cuchillos que habían sido ocupados por la pareja que había ido al barrio Bajura con el fin de hacer cierta investigación de un hecho de sangre que había ocurrido en ese barrio de Bajura de Isabela; le presenté dos cuchillos y le pregunté cuál de esos dos cuchillos era el de él."

La defensa objetó, y pidió la eliminación de la pregunta y la respuesta. El fiscal de distrito manifestó que, si Ortiz hablaba libre y espontáneamente al público cuando su narración de lo que había ocurrido fué interrumpida por el jefe de la policía, la prueba era admisible. El juez observó que eso debía aparecer de la declaración del testigo. La defensa dijo que el fiscal de distrito estaba guiando al testigo con manifestaciones que éste no había hecho, y sugiriéndole lo que debía decir. En respuesta a una pregunta del juez, el testigo manifestó: Que Ortiz y Grajales, quienes se habían herido, estaban en el despacho del Dr. Sánchez, y allí había mucha gente; que Ortiz estaba relatando a los circunstantes cómo él y Grajales se habían herido mutuamente; que cuando el testigo mencionó el hecho de que el cuchillo de Grajales había sido hallado en poder de Ortiz, y el de Ortiz en posesión de Grajales, Ortiz explicó que el cuchillo de

Grajales con el cual había sido herido permaneció en la herida hasta que llegó a su casa; y que Ortiz identificó como suyo el cuchillo ocupado en poder de Grajales.

. Se traslució en la repregunta que Ortiz hizo esas manifestaciones en la oficina del Dr. Sánchez la noche de la reyerta, que a él no se le había conducido al cuartel de la policía, que los dos cuchillos habían sido entregados al jefe de la policía en el despacho del Dr. Sánchez, y que había de 15 a 20 personas presentes al tiempo de la conversación entre Ortiz y el jefe de la policía.

El carácter voluntario de las manifestaciones atribuídas a Ortiz quedó bastante bien establecido por las circunstancias reseñadas, no obstante la forma inusitada en que fueron traídas a la luz. Si el juez de distrito erró o no al admitir el testimonio respecto a este extremo sin otra investigación preliminar, no es importante ahora, a falta de objeción al tiempo de tal admisión. Lo mismo puede decirse de aquella investigación preliminar que se hiciera en presencia del jurado. La mejor práctica, sin embargo, es la de permitir que el jurado se retire.

El apelante también dice que la corte erró al admitir una declaración in artículo mortis (*dying declaration*) atribuída a Grajales.

Después de testificar acerca del estado agonizante de Grajales y de las circunstancias indicativas de ese estado, el jefe de la policía del distrito manifestó que informó a aquél del estado en que se hallaba y le pidió que explicara lo ocurrido. La defensa se opuso por el fundamento de que no se había sentado una base suficiente para la admisión de la declaración in artículo mortis. El juez de distrito hizo algunas preguntas adicionales sobre el estado de Grajales, y entonces anunció que admitiría lo dicho por el interfecto. Nuevamente se opuso la defensa por la misma razón que antes. Respondiendo a una instancia del juez para que adujera motivos más específicos, el letrado explicó que el

fiscal debía establecer primero que el lesionado se había percatado de su condición, y que declaró en la creencia de que estaba próximo a morir. El fiscal de distrito contestó que ya el testigo había declarado a ese efecto. En esto estaba equivocado. Entonces la corte desestimó la objeción. Esto, desde luego, fué error.

Cuando el testigo empezó su narrativa de lo que Grajales había dicho, a saber, que la noche en cuestión había asistido a un velorio y que él y Ortiz habían salido juntos, el juez lo interrumpió para preguntarle si ésa era la primera manifestación que Grajales había hecho. El testigo contestó afirmativamente, pero el fiscal entonces preguntó si Grajales, antes de hacer el relato, había dicho algo respecto de su estado físico. La respuesta fué que cuando el testigo le informó a Grajales acerca de su gravedad, él contestó que lo sabía, que sabía que no se levantaría más. A esto siguió una pregunta capciosa en forma de una conclusión, y una respuesta afirmativa al efecto de que Grajales comprendió que estaba próximo a morir.

Es de lamentarse que al abogado de la defensa en un caso criminal deba exigírsele que informe a la corte y al fiscal de distrito, en presencia de un testigo de cargo, lo que un deponente deba decir antes de que se admita como prueba una declaración in artículo mortis. Sin embargo, finalmente se estableció una base para la admisión de esa declaración, y la forma accidental en que fué sentada no constituye, sin más, suficiente motivo para la revocación.

Luego el apelante dice que la corte cometió error al admitir el testimonio de un testigo cuyo nombre no aparecía en la lista contenida en la acusación, y al permitir que el fiscal ocupara la silla y explicara en presencia de los señores jurados por qué el nombre del testigo no había sido incluído en la lista. En la forma en que se ha desarrollado en el alegato del apelante, esta cuestión no requiere seria consideración.

■ Otra contención es que la corte erró al permitir que un policía declarara sobre manifestaciones hechas por el acusado, sin demostrarse primeramente que fueron hechas voluntariamente. La naturaleza voluntaria de estas admisiones fué claramente establecida antes de que se permitiera al testigo declarar lo que el acusado había dicho. Estas manifestaciones fueron hechas por el acusado en su propia casa, al llegar el policía poco después de la disputa. El acusado no estaba bajo arresto. El hecho de que estuviese hablando a un policía, o contestando preguntas hechas por un miembro de la uniformada, no hacía que sus manifestaciones fueran inadmisibles en evidencia.

■ El apelante también se queja de ciertas instrucciones. Una objeción es que el juez asumió que el hecho de una riña y el del uso en la misma de dos puñales, habían quedado establecidos por la prueba.

El juez dijo en parte:

"(a).—El fiscal para sostener esta acusación presentó y fueron admitidos como prueba material los instrumentos de que se valieron los contendientes—el interfecto y el acusado—en la riña, o sea, dos puñales; y también examinó varios testigos y la teoría que se establece por las declaraciones de esos testigos, es decir, lo que esas declaraciones han tendido a demostrar, es más o menos lo siguiente:—"

Este fué el prefacio de un resumen de la evidencia de cargo. Después de explicar esa prueba, el juez expuso la teoría de la defensa e hizo un resumen de la prueba en apoyo de la misma. Finalmente se dejaron al jurado todas las cuestiones de hecho en términos inequívocos.

Un juez sentenciador no necesita caracterizar cada uno de los hechos en controversia como un hecho alegado cada vez que lo mencione en sus instrucciones. El lenguaje critiado por el apelante debe interpretarse en relación con el contexto y a la luz de las instrucciones en conjunto. Así interpretado, difícilmente puede decirse que el juez asumió la supuesta riña como un hecho establecido.

■ El hecho de que en sus instrucciones al jurado el juez usara la palabra "puñales" mientras que los testigos se refirieron a las armas en cuestión como cuchillos, no es suficiente motivo para la revocación. Ambos cuchillos estaban ante el jurado, y éste no fué inducido a error por cualquier referencia inadvertida a estas armas como puñales.

■ La otra objeción se dirige a la cuestión de hasta dónde puede ir un juez al someter al jurado cuestiones relacionadas con la admisibilidad y valor probatorio de declaraciones in artículo mortis. La ley que gobierna estas materias fué expuesta correctamente. Aunque hay alguna autoridad en contrario, creemos que el juez estuvo en lo cierto al permitir que el jurado considerara todas las cuestiones de hecho bajo instrucciones adecuadas en cuanto a la ley aplicable a declaraciones in artículo mortis.

"*In limine,* la cuestión de si supuestas declaraciones in artículo mortis se hicieron o no bajo tales circunstancias que las harían admisibles en evidencia, debe ser determinada por la corte a virtud de la prueba preliminar o predicado de su introducción. Pero la regla general en semejante caso es que todo lo que se requiere para permitir que la declaración vaya al jurado es que se presente prueba *prima facie* de que las manifestaciones fueron hechas cuando el declarante estaba in artículo mortis y tenía consciencia de su estado agonizante; que al fin y al cabo la cuestión es una a dirimir por el jurado, que puede descartar la declaración si cree que no fué hecha cuando el interfecto se hallaba in extremis y estaba consciente de su condición, y constituye error eliminar esta cuestión de la consideración del jurado. . ." 30 C. J. 268, sec. 507.

De todos modos, el error, de haber alguno, no fué perjudicial, sino en favor del acusado, y él no está en condiciones de quejarse del mismo.

La contención final del apelante es que la sentencia y el veredicto son contrarias a derecho y a la prueba. Esta cuestión, tal cual se presenta en el alegato, no requiere discusión separada.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Wolf no intervino.